BUTLER, CLAPP, WENTZ & CO. AND TEFT, WELLER & CO.
v. PHILIP SANGER.

No. 302.

1. **Assignment for Creditors—Consideration.**—A debtor may in good faith voluntarily prefer some of his creditors; and when he executes a deed of trust looking to that end, transferring his property for such purpose, and the trustees and beneficiaries act upon the instrument and accept its benefits, this between the parties constitutes a contract resting upon mutual promises that may result in a benefit and advantage to one of the contracting parties or a loss to the ·other.

2. **Surety may be Preferred by Assignment.**—That a preferred cred-itor in an assignment is but a surety for the grantor in the deed of assignment, and that the debt is not due, does not invalidate such assignment. The surety was shown to be solvent, and the grantor was insolvent.

3. **Same.**—As the debtor could have secured by preference the creditors who held other personal security, such power would involve the right to prefer such surety.

4. **Assignment Providing for Clerks, Attorneys, etc.**—Provisions in a deed of assignment for benefit of creditors, empowering the trustee to sell at public or private sale, and to employ clerks and attorneys to advise and assist him in the execution of the trust, may or may not be reasonable in the execution of the trust. But it seems that where the property assigned is insufficient to satisfy the preferred creditors, that an unpreferred creditor would have no ground ·of complaint about the expenses of executing the trust.

5. **Attorney. Fees.**—A provision in a deed of trust for reasonable attorney fees for writing the deed of assignment, and for advising the trustee in executing the trust, is legal, and no ground for setting aside the assignment; besides, ex-penses of attorneys in the execution of the trust are proper items of expense and should be allowed.

APPEAL from McLennan.    Tried below before Hon. A. C. PRENDER-·GAST, Special District Judge.

*Robertson & Davis*, and *Stanley, Spoonts & Meek*, for appellants.

1. There was no legal consideration for the transfer, it being in effect a gift to the preferred creditors.

2. The selection of attorneys for the grantee is a badge of fraud, which, unexplained, renders the instrument void.    Carlton v. Baldwin, 22 Texas, 724; Moody v. Paschal, 60 Texas, 485; Nichols v. McEwen, 17 N. Y., 22.

3. Equity is strained to its limits in protecting a preferred bona fide creditor of an insolvent against postponed creditors, and will not permit the addition of a provision by which they are compelled to pay the expenses of an attorney employed for the purpose of procuring for favored creditors their unjust preference, and in protecting the fund from attacks by the postponed creditors. Nichols v. McEwen, 17 N. Y., 22; Dunham v. Waterman, 17 N. Y., 1.

4. When a conveyance is fraudulent in part it is fraudulent in whole, and the preferred creditors can not receive the benefit of a fraudulent provision and escape the consequence. The unsecured creditors pay the expenses of securing preferred creditors, and of advising the trustees how to protect them and himself against creditors unsecured. Oppenheimer v. Halff, 68 Texas, 412; Nichols v. McEwen, 17 N. Y., 22; Dunham v. Waterman, 17 N. Y., 1.

5. The trust deed from A. S. Haber to Sam Sanger was entirely voluntary, made without any consideration deemed valuable in law; hence the trust deed was void as to existing creditors of A. S. Haber, and the court erred in holding otherwise. Wallis, Landes & Co. v. Taylor, 67 Texas, 434.

6. It was error in the court to hold that an insolvent, on the eve of failure and bankruptcy, could create a debt to be paid out of his assets, to the exclusion of existing debts, when the party to whom the obligation was given, or in whose favor the debt was created, had notice of the insolvency of the party creating the obligation. Gallagher v. Goldfrank, 75 Texas, 562; Oppenheimer v. Halff, 68 Texas, 412.

7. A provision that the trustee may sell at retail, employ clerks, rent buildings, pay insurance, and in fact do all that the grantor could do, is fraudulent as to creditors, and void. Hass v. Kraus, 75 Texas, 106; Gallagher v. Goldfrank, 75 Texas. 562; Bump on Fraud. Con., 415; Wait on Fraud. Con., secs. 331–356; Dunham v. Waterman, 17 N. Y., 9; Bank v. Inloes, 7 Md., 380; Jones v. Lyer, 52 Md., 211; Rindskoph v. Guygenheim, 3 Colo., 284; Gere v. Murray, 6 Minn., 305.

8. The facts that the preferred debts were not due, that other creditors were pressing for payment, that Haber feared an attachment and desired to postpone pressing creditors, that he wanted to save loss to himself, and that these considerations influenced him to make the trust deed, was such a taint as to render the deed fraudulent. Baldwin v. Peet, 22 Texas, 721; Jackson v. Harby, 65 Texas, 713; 1 W. & W. C. C., sec. 1329; Wait on Fraud. Con., secs. 196, 324; Bump on Fraud. Con., 353; Dunham v. Waterman, 17 N. Y., 9; 4 B. Mon., 423; 52 Md., 211; Wait on Fraud. Con., sec. 325; Bank v. Nunes, 80 Ky., 334.

*Alexander & Campbell*, for appellee.— 1. There was a full consideration proven by appellants to support the deed of trust.

On the right of a surety to take indemnity, and that the surety is a creditor from the date of the contract: Wait on Fraud. Con., sec. 90; Pennington v. Seal, 49 Miss., 525; Brandt on Sure. and Guar., sec. 188; Goodheart v. Johnson, 88 Ill., 58.

2. The employment of attorneys to draw an important mortgage or deed of trust, and the payment to them of a small fee therefor, and an agreement on their part to advise the trustee as to the performance of his duties under the instrument, is proper under almost any set of circumstances, but especially so in this case, as his duties were, among other things, to make collections of notes and accounts besides making sales of the goods, and the instrument only provided, by an expressly stipulated fee, what the trustee would have had the right to do without a stipulation on the subject. Baldwin v. Peet, 22 Texas, 720, and cases cited; Bump on Fraud. Con., 425; Butt v. Peck, 1 Daly, 83; Casey v. James, 37 N. Y., 611; Jacobo v. Runson, 36 N. Y., 668; Iselin v. Dalrymple, 27 How. Pr., 137.

3. Mode of selling goods: Halstead v. Gordon, 34 Barb., 422; Sackett v. Mansfield, 26 Ill., 326; Hoffman v. Mackall, 5 Ohio St., 124; Nye v. Van Huson, 6 Mich., 329; Marks v. Hill, 15 Gratt., 400.

Expenses of executing trust: Bump on Fraud. Con., 423; Baldwin v. Peet, 22 Texas, 721.

Direction to sell without unnecessary delay good: Bump on Fraud. Con., 412, 413.

FISHER, CHIEF JUSTICE.—A. S. Haber was a retail merchant on the 15th day of May, 1889; being at the time insolvent, and indebted to appellants, he executed a conveyance of all his property subject to execution, consisting of a stock of merchandise at Waco, and all his store fixtures, safe, and furniture, notes and accounts, choses in action, etc., to Sam Sanger, trustee, for the benefit of certain preferred creditors, other than appellants. Among other preferred claims was one for $250, alleged to be due the law firm of Alexander, Winter & Campbell, for their services in preparing said conveyance, and to advise the trustee as to his powers and duties in the administration of the fund. The preferred debts aggregated about $10,000. Some days afterwards the trustee sold at private sale to Philip Sanger, one of the preferred creditors, the entire stock of merchandise for the sum of $8500 cash, and he went into possession. Appellants sued out and levied attachments, aggregating in amount $3901.21, on said stock. Philip Sanger claimed the stock, and gave bond, waived inventory, and this suit is a trial of the right of property under the statute. The goods were valued at $3500 by the officer. Issues were submitted and joined. Appellants sought to impeach said conveyance, and, among other grounds, alleged fraud and an intent to hinder and delay appellants; that it was made voluntarily, without request

or consideration; and that many of the preferred claims, including that of Philip Sanger, were fictitious, and that the debt of Alexander, Winter & Campbell was not a proper charge against the trust fund, and was void. The case was tried before the court, who found on all the issues for appellee, filed his conclusions of law and fact, and rendered judgment for appellee; to which appellants excepted and gave notice of appeal.

We find the following facts:

1. A. S. Haber was a retail merchant, and on the 15th day of May, 1889, he was practically insolvent; on that day he executed and delivered a deed of trust to Sam Sanger, as trustee, conveying all his stock of merchandise, accounts, notes, and store fixtures, which embraced all of his property, in trust for the benefit of certain preferred creditors named, as follows: Philip Sanger, $3000; Mrs. Jeanette Haber, $2200; Waco State Bank, $650; B. Frelich & Co., $343.50; Slayden-Kirksey Woolen Mills, $48; Sam Sanger, $925; Sanger Bros., Dallas, $870; Sanger Bros., Waco, $970.16; John T. Walton, $930; Alexander, Winter & Campbell, $250. The aggregate amount of such preferred debts is $10,286.66. The instrument also provided for the payment of the interest due on these debts. The instrument provides, that Sam Sanger, trustee, shall take possession of said property for the use and benefit of the preferred creditors, and shall proceed to take an invoice of said property, and without unnecessary delay sell the said property at public or private sale for cash, either by wholesale or retail, and that he shall proceed with due diligence to collect the notes and accounts.

2. All the debts secured by the deed of trust were legal and valid debts against Haber at the time of the execution of said instrument. The debt of Alexander, Winter & Cambell was a reasonable attorney fee for services in drawing and preparing the trust deed so executed by Haber, and for services and advice to the trustee in regard to the proper execution of the trust. The debts to Philip and Sam Sanger arose out of the fact that they were sureties on the paper of Haber for the amount stated. They had not paid the debts when the deed of trust was executed, and the debts at that time were not due. In this connection, we also find that Haber, at the time of the execution of the deed of trust, had no other property than the goods conveyed; and that the proceeds of the sale of the goods by the trustee were applied to the payment of these debts, and that at said time the Sangers were solvent and responsible for the debts upon which they were sureties. We also find that the amount of the debt to Alexander, Winter & Campbell was reasonable for the services rendered. The only consideration for the execution of the deed of trust was to secure the payment of the debts mentioned, and that in the execution thereof Haber's purpose was not to defraud his other creditors, but was simply in good faith to secure the claims of the preferred creditors.

3. May 24, 1889, for the sum of $8500, the trustee sold the goods and property described in the deed of trust to Philip Sanger; the trustee at the time being in possession of said goods under said deed of trust. Prior to the sale to Philip Sanger, the trustee sold about $300 worth of the goods. The goods sold for a fair price, and the proceeds thereof were paid on the secured debts.

4. The amount of debts secured and preferred by the deed of trust was about $10,286, with interest; and we find that the value of the goods and property transferred by the deed of trust did not exceed in value more than about $9000.

5. We find that Philip Sanger, by virtue of his purchase of the property, acquired a good title, superior to any claim of the appellants.

6. The appellants were creditors of Haber at the time the deed of trust was executed, and their claims were legal and valid debts against him, and upon which they have obtained judgments; and at their instance, during the pendency of their suits against him, writs of attachments were issued, and after the purchase of the goods by Philip Sanger at the trustee's sale, were levied upon the property conveyed by the deed of trust.

*Opinion.*—Appellants' first assignment of error is too general to require us to consider it; but we can say that we think the finding of the court below as to the validity of the deed of trust is supported by the facts. Our findings of fact dispose of this assignment.

In reply to the second assignment of error, if the appellants are serious in urging it, we clearly think that the deed of trust is supported by a consideration. A debtor may in good faith voluntarily prefer some of his creditors; and when he executes a deed of trust looking to that end, transferring his property for such purpose, and the trustee and the beneficiaries act upon the instrument and accept its benefits, this, between the parties, constitutes a contract resting upon mutual promises that may result in a benefit and advantage to one of the contracting parties or a loss to the other. Such is this instrument. Lane & Saylor v. Scott & Culver, 57 Texas, 372.

The fourth error assigned urges the invalidity of the deed of trust, or so much thereof as secures the debts of Sam and Philip Sanger, for the reason, that they being sureties of Haber upon debts that were not due, their liability was contingent, and only becomes fixed when default was made by their principal, and that a conveyance to a surety of property of the insolvent debtor, authorizing them to convert it into money, is fraudulent as to other creditors.

The facts in the record clearly show that Haber's purpose was to secure the Sangers as sureties upon his paper. He at the time was insolvent, and realized his inability to meet the paper when it matured. The Sangers, as to the debts upon which they were sureties, were liable for

the payment thereof. This liability was certain and in no sense contingent, in so far as their liability existed as original promisors to the payees of said paper. When the paper matured, the holders could unquestionably demand and seek payment from the sureties. The inability of the principal debtor to pay would not relieve the surety; and the only event that would discharge them would be some act of laches or negligence upon the part of the creditor, which the law will not presume has occurred or will occur. Nothing of the kind is shown in this case. But assuming that the surety's liability was contingent, he nevertheless was a creditor of the debtor from the time he placed his name upon the paper, and was a debtor of his principal's creditor from that time, and was bound for the debt. Wait on Fraud. Con., 2 ed., sec. 90. We have not been able to find where the debtor has ever been denied the right of indemnifying his surety against loss, even though his liability may be contingent.

"It is settled law that the principal may lawfully indemnify his surety against loss in consequence of his suretyship; and when such indemnity is executed in good faith, it is superior to the claims of existing creditors that are not previously secured by a lien upon the same property. The liability of a surety for the debt of his principal, before he has made any payment on account thereof, is a sufficient consideration for the execution of the instrument that creates the indemnity in his favor." 1 Brandt on Sure. and Guar., secs. 218, 219.

The surety may, before the payment of the debt for which he is bound, foreclose the indemnity in his favor; especially is this true when the debtor contracts or consents that he may do so, or when the debtor is insolvent. 1 Brandt on Sure. and Guar., secs. 221, 223, 224; Marsh v. Hubbard, 50 Texas, 207.

We suggest another view of this question which, in our opinion, supports the deed of trust. It is not denied but that the deed of trust would have been valid if it had directly named the creditors for whose claims the Sangers were sureties, as the beneficiaries entitled to the security. If the deed of trust had been executed directly to them to secure their debts, it would, if not for other reasons objectionable, have been a valid and legal encumbrance upon the property; and if the debtor executing the instrument by its terms consented, as he did in the deed of trust before us, that the beneficiaries may sell the mortgaged property prior to the maturity of the debt and apply the proceeds to the payment of it, the trustee would have been empowered to so sell, although the debt was not due. But when the instrument is directly executed to the sureties, creating the lien as an indemnity in their favor, equity, by subrogation, creates a right in favor of the creditor as a lienor upon the property encumbered equal to that created by the contract of indemnity with the surety. The contract of indemnity, so far as the lien is concerned, results not only to the benefit of the surety, but also to the creditor.

Whatever at one time may have been the diversity of opinion in the courts upon this question, we believe the weight of authority for the better reason so establishes this right in the creditor.

"As a general rule, when a surety, or a person standing in the situation of a surety for the payment of a debt, receives a security for his indemnity and to discharge such indebtedness, the principal creditor is in equity entitled to the full benefit of that security; and it makes no difference that such principal creditor did not act upon the credit of such security in the first instance, or even know of its existence. The authorities place the principle upon the ground, that as the security is a trust created for the better securing of the debt, it attaches to it, and hence it is that it may be available by the creditor, although unknown to him. The right of the creditor is the same when the security is a mortgage or other lien given the surety by the principal after the principal and surety have both become bound, even though there may have been no previous agreement that the indemnity should be given." 2 Brandt on Sure. and Guar., 2 ed., secs. 324, 325, and authorities there collated; 3 Pome. Eq., sec. 1419.

This rule does not conflict with the case of Campbell v. Powell, 78 Texas, 53.

Thus it will be seen, that the security created by the deed of trust practically enured to the benefit of the creditors of the secured debts. It was a trust in their favor, as well as the sureties'. They could in equity have enforced it. And the facts showing that the trustee and the sureties having voluntarily done what a court of equity would have compelled—that is, applied the mortgaged property to the payment of the creditor's debts—we fail to see any valid ground of complaint that can be urged by the appellants.

In reply to the ninth assignment of error, we do not see how the provision in the deed of trust that empowers the trustee to sell at either public or private sale, and to employ clerks and attorneys to assist and advise him in the execution of the trust, will per se render it void. These provisions may or may not be reasonable in the execution of a trust. It depends upon its character and purpose, and the general scope of the trust and the character of the property to be administered. In view of the character of the property conveyed and the purpose of the trust, we believe this provision in the instrument does not appear from the evidence to be either unreasonable or a badge of fraud. But in view of the fact that the property conveyed was less in value than the legal debts secured, we do not see how the appellants can complain or be injured, even though such a provision in the deed of trust should be held illegal. It could not have the effect, by force of such a provision, to render the instrument void, but would simply be, if anything, a badge of fraud that

may be explained away.   The fact that the property encumbered is of value less than the debts, and they be legal and valid, and the purpose be in good faith to secure them, we do not see how such a provision would render the contract fraudulent as to other creditors, or have the effect, in contemplation of law, to hinder and delay the collection of their claims.   Bank v. Marshall, 1 Texas Civ. App., 711.

The appellants contend that the deed of trust is void, because Haber,. the insolvent debtor, could not, at the execution of the deed of trust, create a debt, and provide for its payment out of his property, in favor of Alexander, Winter & Campbell for attorney fees in executing the instrument.

Two hundred and fifty dollars is the amount secured to Alexander,. Winter & Campbell for their services in writing and drawing the instrument creating the trust, and for professional services as attorneys rendered in the execution of the trust.   It is not pretended that this amount is unreasonable.   The law authorizes an insolvent debtor to prefer his. creditors to the exclusion of others, and to create an encumbrance upon his property for their security.   It is usual and customary in the exercise of this privilege, in creating the estate in the preferential creditors, to do so by an appropriate instrument in writing to that effect.   It is also usual and customary in the creation of these estates that the labor of drafting the instrument and determining the legal and proper manner of its execution is put in the hands of those that are supposed to be skilled in these matters.   It is well known that the performance of this service is peculiarly within the province of the attorney and counsellor at law, and he is. generally esteemed the one who is skilled in the performance of this work; and the very nature and character of the instrument to be executed suggests that this skilled service is necessary in order that the estate sought. to be created may be done in a legal way.   Adjudicated cases upon the construction of instruments of this character have doubtless advised the. profession that it is not only doubtful if the ordinary layman has the requisite skill and learning to properly draft such documents, but their proper and legal execution often fail when attempted by those learned in the law.   The right in the insolvent debtor to execute the trust implies. the power and authority to execute such an instrument as would create it, and to resort to the methods and expedients usual in such cases.   The authority to employ the attorney for this purpose as one of its incidents implies the power to pay him.   This payment can be made, so that the amount is reasonable, out of any unencumbered property owned by the debtor.   Baldwin v. Peet, 22 Texas, 720; Hill v. Agnew, 12 Fed. Rep., 230; Bump on Fraud. Con., 3 ed., 423–425.

The expenses for the services of the attorneys incurred by the trustee in executing the trust, if reasonable, are proper items of cost to be charged

against the fund. The law implies the right in the trustee or assignee, in the performance of the trust, of the incurrence of reasonable expenditures for the services of attorneys when needful to a proper execution of the trust. Burr. on Ass., 5 ed., sec. 417; Bump on Fraud. Con., 3 ed., 423–425, 572.

The judgment of the court below is affirmed.

*Affirmed.*

Delivered October 18, 1893.