### BEAVER, MEADE & ENGLEWOOD R. CO. v. BAKER et al.

No. 21387. March 6, 1934.

Rehearing Denied April 3, 1934.

Adrian S. Houck, Tincher & McGregor, and A. Carey Hough, for plaintiff in error.

Clifford W. Ferguson, John Head, and John L. Gleason, for defendants in error.

RILEY, C. J. This action was commenced by plaintiff in error against R. F. Baker and 45 others for the recovery of the sum of $19,988, claimed to be due upon a certain contract alleged to have been executed and delivered by the defendants to plaintiff. Plaintiff alleged defendants undertook and agreed to procure for the plaintiff the entire right of way of the railroad from Forgan, Okla., to Hooker, Okla. (except that across the right of way of the Chicago, Rock Island & Pacific Railway Company), and the right of way and station grounds through and in the town of Hooker, and thence northwest for about one-half mile to the center of a certain designated section of land, and thence west ten miles on the half section line; to deliver same complete with good title free of cost to plaintiff, including all contracts, deeds, abstracts of title, and that damages, court costs, and attorney's fees and costs and expenses of condemnation or other legal proceedings and all amounts paid out for the purchase or

settlement with the owner, all to be furnished and delivered as fast as needed by the railroad company for construction purposes, all to be done, however, by the time the railroad company should complete the extension of its line into Hooker. The consideration therefor was that the plaintiff would build an extension of its railroad from the town of Forgan to Hooker and complete same within the time prescribed by the Interstate Commerce Commission or any extension thereof which might be granted. The contract further provided that the plaintiff railroad company would give the other parties a good and sufficient bond, with certain named sureties, conditioned that if it failed to build and complete its railroad into Hooker, as provided in the contract, it would reimburse such parties for any and all moneys paid out to the landowners for such right of way and all other and proper necessary expenses in acquiring same, together with interest at the rate of seven per cent.

Plaintiff further pleaded in substance that it had fully complied with said agreement, and in so doing had advanced and paid out for said defendants in procuring the necessary right of way the sum of $25,460.94, and alleged that under said contract it was entitled to be reimbursed by defendants, but that defendants had wholly failed, neglected, and refused to reimburse plaintiff except in the sum of $7,972.11. A copy of the contract and an alleged true and correct itemized statement of the account duly verified were attached to the petition. In a second cause of action plaintiff alleged that in addition to the sum so paid out, plaintiff had become obligated to certain landowners for right of way in the sum of $2,500, which it had not yet paid, but would be compelled to pay.

Certain of the defendants filed a motion to make the petition more definite and certain. This motion was overruled. There also appears in the record an order purporting to overrule a demurrer of the defendants to the petition, but the record does not contain the demurrer.

Defendants answered by general denial; and by specific denial, that they ever executed the contract sued upon; that plaintiff failed to build said railroad from Forgan to Hooker within the time provided by the contract and failed to so extend said railroad within the time provided by the Interstate Commerce Commission or any extension thereof; said plaintiff never did build said line of railroad into the

town of Hooker; that the contract sued upon was wholly without consideration. They also specifically denied under oath the correctness of the account set out and attached to the petition and specifically denied that any of the defendants ever executed the contract. The answer was verified by the oath of 43 of the defendants.

A jury was impaneled and the case went to trial November 18, 1929. Thereafter and during the course of the trial, the trial court in effect ruled that the contract, in so far as it applied to the right of way between the town of Forgan and the line of the Chicago, Rock Island & Pacific Railway Company near the town of Hooker, came within the statute of frauds in that the right of way of a railroad comprises an interest in real estate. and the contract failed to describe with sufficient certainty the land over and across which the proposed right of way would run, or the location thereof across such land, and failed to designate the width thereof.

Thereupon plaintiff obtained leave to file and did file a supplemental and amended petition alleging, in substance, that at the time the contract, dated April 1, 1924, but signed August __, 1924, was entered into, the right of way from Forgan to Hooker had been laid out and determined and was well known to all the parties; that the same consisted of a strip of land 100 feet wide, which was also known to all the parties, and ran over and across certain lands therein described and owned by several different parties all named in the supplemental and amended petition; that by reason of the action and conduct of defendants in procuring portions of said right of way and in reimbursing plaintiff in part for expenses incurred by it in procuring other portions of the right of way and by acting and cooperating with plaintiff in procuring still other portions thereof, and by various and sundry other acts done and performed by some of the defendants specifically named, they had fully ratified and confirmed said contract; that in so doing certain other defendants named were duly authorized by defendants to represent them under the contract; and also allege that all of the defendants acted in various ways in carrying out the contract; that in addition thereto certain other persons named, and not parties to the contract, and not parties to this action, were fully authorized and recognized as representatives of defendants and authorized to act, and that they did and performed certain acts for defendants in said matter and under said contract.

Defendants then amended their answer, in effect, denying that any of the persons named by the plaintiff in the amended petition were ever authorized to represent defendants or any of them in the matter of purchasing and procuring or any manner connected therewith; denying generally all the allegations contained in the supplemental amended petition, and again specifically alleged that said contract had never been executed by any of the defendants in that it was never delivered by any of the defendants, and if said contract had ever been signed by any of the defendants there was no delivery thereof made by any of defendants. They further allege that said contract, if signed by any of the defendants, was made and signed by them on condition, and with the specific understanding and agreement that it was not to become effective and should not be a contract unless and until at least 100 substantial citizens of Hooker or vicinity had executed and become bound thereby, and that if any delivery of said contract had been made by any of said defendants, it was only a conditional delivery and was not effective for the reason that there had been no compliance with the conditions.

Plaintiff replied by general denial of the new matter, and in the reply alleged defendants were estopped to set up the defense in their amended answer contained by reason of representations made and acts performed in recognition, approval, and confirmation of the contract.

The trial then proceeded with the issues thus amended and supplemented, and evidence was submitted covering some 800 or more pages in the record. At the close of evidence both sides moved for a directed verdict, which motions being overruled the court submitted the case to the jury under instructions somewhat involved and of necessity quite lengthy. Verdict was rendered and judgment entered for all defendants who were served or appeared, and plaintiff appeals.

The assignments of error in the petition in error are:

1. "The court erred in overruling the motion of plaintiff in error for a new trial. * * *"

2. "The court erred in not rendering judgment for plaintiff in error and against defendants in error."

Under these assignments a number of questions are presented. Much space in the brief of plaintiff in error is devoted to the question of the binding force of contracts such as is here involved. Aside from the

question of whether or not it comes within the statute of frauds, there is no room for controversy on this point. Many well considered cases are cited which uphold the validity and binding force of contracts of a similar nature. But the principle question is not whether the contract or agreement, if entered into, is binding, but is whether or not the instrument sued upon ever became a contract between plaintiff and defendants or any of them. It is contended by defendants that said instrument was signed by defendants upon the express understanding and agreement that it should not be delivered nor become effective as a contract unless and until it was signed by at least 100 citizens of Hooker and vicinity, who were financially substantial, and not then until after it had been so signed, and each of the signers approved all the signers as being substantial financially and gave their assent to its delivery. Another question was whether said agreement was ratified by said defendants or any of them although not signed and approved by 100 substantial citizens of Hooker and vicinity. Much testimony on these questions was submitted to the jury for its determination under instructions fairly covering the law. It is well settled that "a contract may be signed on condition that it shall not take effect until others have signed it." 6 R. C. L. 641.

In Campbell Printing Press, etc., v. Powell, 78 Tex. 53, it is held:

"A promissory note was signed by a number of persons with condition to its delivery ten solvent persons should sign it. The condition was in writing attached to the instrument. The paper was delivered, the condition detached from it. Held, the party taking the note with knowledge of the condition took the risk of the solvency of the signers, there being more than ten names signed."

"In hands of the payee or holder with notice( it being nonnegotiable) the obligors would not be bound by the delivery if not signed by ten solvent men."

In Pepper v. State, 22 Ind. 399, it is held:

"Where such a bond is presented by the principal in it to several persons, and their signatures as sureties for him are solicited by him, and he represents to them severally that, before its delivery he will procure the signatures of a certain number of other persons, as sureties, or of certain named persons, and some of them are induced by such representations to sign it, and others sign it upon condition that such other signatures shall be procured, and others sign it in consideration that such other signatures shall be procured, and such other signatures are not procured, these several classes of persons, in defense to an action upon such bond may show these facts."

In the body of the opinion, it is said:

"As to those who signed without any false representations, promises or pledges having been made to them, we are clearly of the opinion that the bond is of no binding force. Each man had a right to rely upon the fact which appeared before him on the bond, namely, that he was entering into a contract in which certain other men, whose names were there signed, were jointly bound with him. When they are discharged, it increases his liability. and in fact it is no longer his contract, and the contract which he supposed he was making."

The above is a well considered case, and many authorities are cited therein upholding the rule. See, also, Butler v. Smith, 35 Miss. 457; Daniel v. Gower, 54 Iowa, 312; Ayers v. Milroy, 53 Mo. 516.

In Mellett v. Parker, 2 Met. (Ky.) 608, the application of the rule as against one having no knowledge of the conditions upon which the instrument was signed was denied, but the rule was recognized as against one having such knowledge.

There was also much evidence presented on the question of whether or not defendants, or certain of them, had by their acts and conduct ratified said agreement so as to make it binding on them although it was not signed and approved as contended by them it should have been. This was likewise a controverted question of fact upon which there was conflict in the evidence. The court instructed the jury upon this question as follows:

"If the instrument sued upon in this case was not properly delivered as 'delivery' is defined herein, but if the instrument as made was thereafter ratified by the defendants or some of them, then such ratification constituted a new contract, and is binding, so far as it is legally sufficient, on each of the defendants who ratified the same. 'Ratification' is an agreement to adopt an act performed and may be express or implied. In other words it is the approval by act, word or conduct, of that which was attempted to be done but which was improperly or unauthorizedly done.

"In order to effect a ratification, however, it is necessary that the one or ones so ratifying must know all of the facts and circumstances concerning the improper or unauthorized act or acts done or performed. And no person without express authority for that purpose can ratify for any other person. If the person so ratifying does not

know all of the facts and circumstances concerning the improper or unauthorized acts done or performed, then no ratification is effected.

"Therefore, if the contract involved in this suit were signed on condition that it should not become a binding contract and should not be delivered until certain conditions had been performed; and if such conditions were known to the plaintiff and the contract was surrendered to it as a binding contract in violation of these conditions, then all those defendants, if any, and only those defendants, who knew all these facts and ratified the contract as surrendered to the plaintiff, if that were done, are bound thereon to the extent the same is valid under the statute of frauds or is enforcible notwithstanding said statute."

While this instruction appears in the record as a part of instruction No. 4, it deals separately with the question of ratification and might well have been separately numbered. But plaintiff in error does not point out in its brief wherein the instruction as given, in so far as it applies to the question of ratification, is erroneous. It does not appear to be so.

Plaintiff contends that the court erred in holding and ruling that the contract sued upon came within the statute of frauds as to all that part of the right of way covered by the contract between the towns of Forgan and Hooker. The effect of this holding or ruling was to sustain a demurrer to the petition of plaintiff as applied to its claim for payment under the contract for the right of way between said towns. (The ruling referred to appears in the record at pp. 182-183.)

The record does not disclose that the plaintiff objected to such a ruling or saved any exceptions. Without objecting to the court's ruling, plaintiff appears to have asked and obtained leave to amend its petition to conform to the order of the court. The question is specifically raised by the plaintiff in paragraph 3 of its motion for a new trial.

It seems to be well settled that "When a demurrer is sustained to a pleading and the pleader thereafter takes leave to amend, the error, if any, in sustaining said demurrer is thereby waived and cannot be assigned as error." Berry v. Barton, 12 Okla. 221, 71 P. 1074; State ex rel. Freeling v. Martin 62 Okla. 295, 162 P. 1088; Wagner v. Thorpe, 151 Okla. 142, 2 P. (2d) 1027.

The alleged error in the ruling of the trial court in this regard is therefore not properly raised.

As stated before, the questions of whether or not the contract had been delivered by the defendants who had signed same, and whether the contract sued upon had been taken out of the statute of frauds, either by the parties thereto relying thereon, by their acts, conduct, and dealing with each other, so far procured the right of way and appropriated the same for that purpose as to make its location and the extent of the realty taken definite and certain; or whether the parties to the contract, relying thereon and acting thereunder, by their acts, conduct, and dealing with each other, had mutually so far performed their obligations under said contract that it would be perpetrating a fraud on the one party to allow the other party to repudiate same, were hotly contested questions of fact upon which the evidence was in direct conflict. The evidence covers more than 800 pages, and cannot, for want of space, be set out in detail. But the record discloses a decided conflict on both questions and the evidence is of such nature as to require the questions of fact involved to be submitted to the jury. The court instructed the jury on the law as to the exceptions which might take the contract out of the statute of frauds, as follows:

"There are exceptions to the rule, with reference to the statute of frauds just stated: One of these exceptions is in the event the parties to the contract, in reliance thereon, and acting thereunder, by their acts, conduct and dealing with each other, have so far procured the right of way and appropriated the same for that purpose as to make its location on and the extent of the realty definite and certain. Another exception is in the event the parties to the contract in reliance thereon, and acting thereunder, by their acts, conduct and dealing with each other, have mutually so far performed their obligations under the contract that it would be perpetrating a fraud on the one party to the contract to let the other party thereto repudiate the same. Then and in the event of either of such exceptions, the contract will be regarded as removed from the operation of the statute of frauds, and the contract will be enforced.

"If the defendants, because of the said contract and acting thereunder, themselves procured a portion of the right of way and, by their declarations, act, conduct and course of dealing, told, encouraged, or permitted the plaintiff to take the initiative in procuring such right of way without designating any specific portion thereof, and sanctioned and ratified what the plaintiff had done in that respect, by subsequently paying the price, costs and expenses of such right of way so procured, and the plaintiff was thereby lulled into the feeling of security in that the defendants would in that way

perform the obligations of the contract, and the substantial part of the right of way was procured and its extent, courses, and distances were generally ascertained and understood, before the defendant refused to perform the obligations of the contract, if they did refuse, and the plaintiff constructed its road into the town of Hooker from the town of Forgan within the time limit prescribed by the Interstate Commerce Commission, or within any extension of time granted by said Commission, then it would be a fraud on the plaintiff not to enforce the provisions of the contract, and if after the concurrence of all these circumstances the defendants refused to perform the obligations of the contract before all the right of way was purchased, then the defendants will be liable for the reasonable market value of all of the land thereafter taken by the plaintiff for such right of way, together with the amount then due for that purpose."

Plaintiff has not cited any authority showing error in this instruction.

The cause having been submitted to the jury on conflicting evidence on the material questions of fact involved under instructions fairly stating the law, the verdict of the jury will not be disturbed. The judgment is affirmed.

CULLISON, V. C. J., and ANDREWS, OSBORN, and BUSBY, JJ., concur.