CAMPBELL PRINTING PRESS AND MANUFACTURING COMPANY v. L. F. POWELL ET AL.

No. 6451.

1. **Conditions to Delivery of a Promissory Note.** — A promissory note was signed by a number of persons with condition to its delivery ten solvent persons should sign it. The condition was in writing attached to the instrument. The paper was delivered, the condition detached from it. *Held,* the party taking the note with knowledge of the condition took the risk of the solvency of the signers, there being more than ten names signed.

2. **Same.**—In hands of the payee or holder with notice (it being nonnegotiable) the obligors would not be bound by the delivery if not signed by ten solvent men.

3. **Practice—Reading Deposition of Witness Present.**—Depositions of a party were taken. He was examined on the trial. The adverse party read parts of the deposition. Over his objection other parts were read. *Held,* such a course may often be necessary to the ends of justice where one party has read a part or an extract from a deposition or other paper; it not appearing that improper testimony was thus introduced, there was no error.

4. **Rights of Persons not Parties to the Suit—Purchasers.**—In suit to foreclose a chattel mortgage not recorded, the pleadings not disclosing any sale by the mortgagors of the property, it was error to submit as a defense such sale. No party was before the court seeking the benefit of such sale, if it was in fact made.

5. **Subrogation of Payee to Security Taken by Sureties on the Note.** — As a principal only takes such rights through subrogation as a surety between himself and the debtor had, it would seem to follow if the security to the sureties was given only for the purpose of indemnifying them if they were bound, that the creditors would not be entitled to subrogation. The relation of debtor and creditor must exist; if not existing, subrogation would not attach to the security.

6. **Contract of Sale of Personal Property—Title Reserved.**—In a sale on credit of personal property, the vendor in the contract of sale reserving title until paid for, the vendee only obtains the possession of the property, and could only sell the possession and the right to pay for the property.

7. **Same.**—The general rule in reference to personal property is that when the seller delivers possession of the thing sold he parts with the seller's lien, but the property in this case was not delivered with intent to pass the title, but rather as a bailment, by the express terms of the contract title remaining in the seller, who expressly agreed to make title only when paid. The seller is entitled to enforce a sale by decree of the property, and such right was in no way affected by the improper delivery to him of the collateral security.

APPEAL from Dallas. Tried below before Hon. Geo. N. Aldredge.

On March 10, 1886, appellant filed its suit against appellees in the District Court of Dallas County, alleging that on February 28, 1884, the defendant Powell executed to plaintiff his promissory note for $4253.94, payable to plaintiff's order twelve months from said February 28, 1884, said note reciting on its face that it was given for the payment of printing presses, engine, type, and material, and was secured by a joint note for $5000 as collateral, dated and maturing as the other note, payable to the order of said L. F. Powell and signed by said Powell and twelve others, naming them, and that the $5000-note was to be deposited with J. O. Stanage, of Dallas, Texas, and by him to be held in trust as security for the payment of the individual note of Powell. That on the same day (February 28, 1884) all the defendants executed a note for $5000, payable twelve months after date to said L. F. Powell, which was made for the accommodation of the defendant L. F. Powell and for the purpose of securing the first mentioned note and enabling Powell to make the contract with plaintiff, which $5000-note was on the day of its execution endorsed in blank by Powell and by him delivered to J. O. Stanage to be held in trust as security for the payment of said first described note. That said two notes were made in accordance with and in pursuance of the terms of a written contract made and entered into by and between plaintiff and said L. F. Powell on said 28th day of February, 1884, wherein plaintiff agreed to sell for $4253.94, evidenced by his note for said amount, in which contract it was expressly agreed and understood that said note of Powell's for $4253.94 was to be secured by a still further note for $5000 payable to said Powell and executed by all the defendants, including Powell himself; and that this $5000-note was to be deposited with J. O. Stanage and by him to be held in trust as security for the payment of said note for $4253.94; and that in the event of L. F. Powell failing to meet the payment of said note for $4253.94 plaintiff should at once have the right to call upon said J. O. Stanage for the surrender of said security note for $5000 and apply it in payment of the note given by Powell alone. Alleging further that the note for $4253.94 is due and unpaid, and that upon the failure of said Powell to pay the same at its maturity plaintiff demanded and obtained possession of said security note for $5000, had both notes protested, etc., and praying judgment against defendants for the debt for which said notes were given.

On May 20, 1887, appellant filed its first amended original petition, adding to its original petition the allegation that on the ——— day of March, 1884, the appellee L. F. Powell executed and delivered to the other signers of the $5000-note (who were sureties of the said Powell and accommodation makers of said note) a chattel mortgage on the property therein described (bought by said Powell from appellant and for the purchase money of which the notes sued on were given) for the purpose of protecting said other signers of said $5000-note against loss by reason of their having

made said note for his, Powell's, accommodation; that by virtue of said mortgage appellant has a lien upon the property therein described, and praying for a foreclosure of said mortgage lien for appellant's benefit.

On the 12th of February, 1888, appellant filed its first supplemental petition, setting out in full the chattel mortgage executed by L. F. Powell to his sureties, the acceptance of said mortgage by the sureties; that in March, 1885, the sureties had Powell execute a bill of sale to them of said property and took possession thereof, and alleging that these facts estopped defendant's sureties from pleading the defenses set forth in their answer.

Plaintiff further alleged that said facts gave it a lien on the property described in said mortgage, and prayed its foreclosure; and further, that in the contract of sale between plaintiff and L. F. Powell plaintiff retained the title to said property until the purchase money was paid, that this property was the same mortgaged by Powell to his sureties, and that this retention of title was meant to secure the payment of the purchase money for said property and gave plaintiff a lien thereon, which it prayed should be foreclosed.

On May 14, 1886, appellees filed their original answer, and on the 23d of February they filed their first amended original answer, demurring to appellant's petition and pleading a general denial, and under oath failure of consideration, the failure alleged being that in contract of sale plaintiff had retained title until property was paid for.    The sureties alone then pleaded under oath: first, that they had never executed the $5000-note sued on; and second, that if they had on or about February 28, 1884, executed a $5000-note, the note they signed then had the payee blank, and written above it, " the following note shall not be delivered until ten men of unqualified solvency shall have first signed the same as sureties," and they signed on the understanding that the condition was to remain a part of the note and the blank for payee was to be filled with the name of Powell's vendor; that plaintiff, with full knowledge of this, had the blank filled in with Powell's name and had the condition torn off, constituting a material alteration; and further, that four of the sureties were insolvent when they signed the note.

On February 25, 1888, plaintiff dismissed as to E. L. Morris and Richard McCubbin, not served.    On February 25, 1888, the cause was tried.    The court overruled the demurrers, and the cause being submitted to a jury a verdict was rendered on February 25, 1888, in favor of all the defendants except L. F. Powell, and in favor of plaintiff against said L. F. Powell for $5612.35, and finding that plaintiff had no lien on the property sought to be subjected to plaintiff's claim.

On February 27, 1888, appellant filed its motion for new trial, which was overruled on the 5th day of March, 1888.

*Robert H. Rogers* and *Dickson & Moroney,* for appellant.—1.   If when

appellant, through its agent Tileston, took the $5000-note the condition written above it had been detached from it and it had no notice of the existence of said condition, then it can recover thereon from all of appellees.    Dair v. United States, 16 Wall., 1; Butler v. United States, 21 Wall., 272; Nash v. Fugate, 18 Am. Rep., 940; Nash v. Fugate, 34 Am. Rep., 780; Jordan v. Jordan, 43 Am. Rep., 294; Chicago v. Gage, 35 Am. Rep., 182; State v. Potter, 21 Am. Rep., 440; Insurance Co. v. Brooks, 3 Am. Law Reg., 399.

2.    Where plaintiff has taken depositions of a defendant who on the trial testifies orally in behalf of defendants, it is error for the court after he has so testified to allow the defendants to introduce in evidence his said depositions covering substantially the same matters as gone over in his oral examination, and this although on his cross-examination plaintiff had been allowed to read to witness certain answers from said depositions, not for the purpose of contradicting witness, and to ask the defendant (witness) if he had not so stated.    This is particularly true where the answers so read to the witness relate only to the circumstances attending the signing by the sureties of the $5000-note while the depositions cover many other circumstances.    Schmick v. Noel, 64 Texas, 406.

3.    The court erred in charging, "If you find that the property described in the mortgage given by L. F. Powell to the signers of said $5000-note was not sold and delivered by L. F. Powell to the Times Publishing Company till after the 20th of May, 1887, then you will find that plaintiff had a lien upon said property," because said charge makes the appellant's mortgage lien upon said property date from the filing of its amended petition setting up and asking foreclosure of said lien, when said lien in law and fact dated from the delivering of said mortgage.    Jones on Pledges, 528, and authorities cited.

4.    The court erred in charging, "If upon the other hand you find that said property was sold and delivered to the Times Publishing Company before the 20th day of May, 1887, then you will find that plaintiff has no lien upon said property," because said charge restricts appellant's right to foreclose its mortgage lien from the day it first asked such foreclosure to the sale of such property by Powell, when in fact the appellant had such right from the maturity of the debt it sues to collect, and has it still. Jones on Pledges, secs. 523, 524, 528.

5.    Appellant had the right to foreclose said mortgage lien as against Powell and his sureties, independent of the Times Publishing Company, who were not before the court in any way, could not be affected by such foreclosure, and were not innocent purchasers of said property.

6.    The nominal mortgagees in said mortgage had no more right or power to affect appellant's rights under said mortgage by attempting to release it than had appellant to affect the rights of said mortgagees by attempting the same kind of release.    The mortgage when once executed

attached to the debt, and the property mortgaged to the sureties became a trust for the payment of the debt, and until this debt is paid the sureties alone can not destroy the trust without making themselves liable. Jones on Pledges, sec. 527; Coleb. Col. Secur., sec. 217; Perry on Trusts, sec. 268.

7. The mortgage having been executed by Powell to his sureties for the purpose of protecting them against their liability as his sureties, and they (his sureties) after this having taken possession of the mortgaged property, either under the mortgage or a new transfer, as a bill of sale from Powell, for the same purpose of protecting themselves against such liability, were thereby estopped from denying their liability by reason of Powell having delivered their note.   Perry on Trusts, sec. 268.

8. The sale of the property by plaintiff to L. F. Powell, with a reservation in the contract of sale of the title to the property in plaintiff until the note given by Powell for the property should be paid, gave the plaintiff the right when default was made on the note to disaffirm the sale and take possession of the property, or to affirm the sale and sue on the note for the purchase money; and in this latter case, where the evidence clearly shows that the parties intended that the purchase money should be a charge on the property and that defendant L. F. Powell should not get a perfect title to the property until it was paid for, plaintiff has a lien on the property to secure payment of the purchase money.

9. Where the plaintiff sues to foreclose an unrecorded lien and defendant pleads among other things a general denial but does not disclaim, he can not by testifying on the trial of the case that he has sold the property to another defeat plaintiff's right to foreclose the lien as to said defendant if plaintiff would have been entitled to a foreclosure had there been no evidence as to such sale; and this is equally true whether defendant swears he made the sale before or after plaintiff prayed for foreclosure, where the party to whom the sale is claimed to have been made is not a party to the suit, and the sale to him is not in issue and not disclosed by the record. Black v. Black, 62 Texas, 296; Beck v. Tarrant, 61 Texas, 404; Slaughter v. Owens, 60 Texas, 671.

*Coombes & Gano,* for appellees. — 1.   A material alteration in a note without the consent of the sureties absolutely vitiates such instrument, regardless of intention; and the presence or absence of fraud in the alteration is material only in determining the question of right to recover on the original debt, when that exists.   Dan. on Neg. Ins., secs. 1383, 1384, 1387, 1411; Wood v. Steele, 6 Wall., 80; Blake v. Coleman, 22 Wis., 415; Wait v. Pomeroy, 20 Mich., 425; Benedict v. Cowden, 49 N. Y., 396.

2. Where part of a statement, instrument, deposition, or record is read to the jury by one of the parties to a cause, the opposing party has the right to introduce the remainder or the whole of such statement, instru-

ment, deposition, or record relating to the matters at issue. 1 Greenl. on Ev., 13 ed., secs. 201, 213; Pope v. Davenport, 52 Texas, 220; Ferguson v. Luce, 1 Ct. App. C. C., sec. 537.

3. Where security has been given to the surety, not for the payment of the debt but as an indemnity, the creditor only has the right of substitution; and this can not exist where, before such substitution is asked, the security has been released or canceled and the property sold. Jones on Pledges, secs. 526, 529.

4. If the relation of creditor and debtor has never existed between a creditor and surety, or having existed has ceased, there can not be any substitution to the rights of the surety. To give such right the surety must at the time be indebted to the creditor upon a valid and binding claim, capable of being immediately enforced. Constant v. Matteson, 22 Ill., 546.

5. Under foreclosure of a lien upon personal property the officer would have to take actual possession of the property; and where it appears during the progress of the trial that property had been sold before institution of the suit, the court can not thus permit injury to a third person, and no lien can be enforced.

6. Where in the purchase of property a note is executed, and in the note or contemporaneous contract the title to the property is reserved in the seller, it is merely an attempted sale and the consideration of the note fails. In such case the pretended vendor's only remedy is a suit for the property and the reasonable value of its use. Ridgeway v. Kennedy, 52 Mo., 24; Little v. Page, 44 Mo., 312; Safe Co. v. Campbell, 2 Ct. App. C. C., sec. 17.

STAYTON, Chief Justice.—On February 28, 1884, appellant agreed to sell a printing outfit to L. F. Powell for the sum of $4253.94, payable in twelve months.

It was further agreed that the purchaser would deposit as collateral security for the payment of the sum named a note for $5000 executed by Powell and the other defendants.

The instrument through which the contract between appellant and Powell was made provided that the machinery should remain the property of appellant until it was paid for, and contemplated that it should be delivered to Powell, but that in default of payment appellant should have the right to demand from the person with whom the collateral was to be deposited that instrument, and to enforce its payment so far as necessary, and that upon payment of the purchase money appellant would make title to the machinery.

The instrument was executed by Powell and by appellant, and Powell executed the following:

"$4253.94.                 GAINESVILLE, TEXAS, February 28, 1884.

"Twelve months after date I promise to pay to the Campbell Printing Press and Manufacturing Company, of New York, or order, the sum of $4253.94, for value received, with interest at the rate of 8 per cent per annum until paid. This note is given for the payment of printing presses, engine, type, and material, and secured by a joint note as collateral at twelve months, dated at Gainesville, Texas, the 28th day of February, 1884, for $5000, and bearing interest at 8 per cent per annum, drawn to the order of L. F. Powell, and signed by John H. Stone, George W. West, G. W. Harper, J. M. Culp, D. D. Swearingen, Richard McCubbin, J. M. Rolls, L. F. Powell, E. T. Morris, H. Hulen, E. C. Perry, E. L. Morris, and Sandy Horton, the same to be deposited with J. O. Stanage, of Dallas, Texas, and by him to be held in trust as security for the payment of this note.

"L. F. POWELL."

The note actually deposited as collateral was as follows:

"$5000.               GAINESVILLE, TEXAS, February 28, 1884.

"Twelve months after date we promise to pay to L. F. Powell the sum of five thousand dollars ($5000), for value received, with interest at the rate of 8 per cent per annum from date, interest payable twelve months after date.

| | |
|---|---|
| "JOHN H. STONE, | L. F. POWELL, |
| "G. W. WEST, | E. T. MORRIS, |
| "W. G. HARPER, | H. HULEN, |
| "J. M. CULP, | E. C. PERRY, |
| "D. D. SWEARINGEN, | E. L. MORRIS, |
| "RICHARD McCUBBIN, | SANDY HORTON." |
| "J. M. ROLLS, | |

This paper was endorsed by L. F. Powell.

The contract between appellant and Powell was made for the former by an agent, Tileston, and the evidence leaves it uncertain whether Powell delivered the collateral note directly to Stanage or to Tileston. The machinery and other property was delivered to Powell, but the written contract between the parties was not recorded. The note not being paid this action was brought on May 14, 1886, on the two obligations against their makers.

At some time as early as March 3, 1884, for the purpose of securing the makers of the collateral obligation, Powell executed to them a trust deed on the property purchased, and perhaps on some other, which empowered them if his note to appellant was not paid to sell the mortgaged property and from the proceeds to satisfy the debt. That instrument was duly recorded on October 10, 1884; but it seems that some, if not all, of the makers of the collateral paper were not aware of its execution until after the notes matured.

By an amended petition filed on May 20, 1887, appellant alleged the .execution of this mortgage and sought its foreclosure; and therein it was alleged that on March 10, 1885, Powell, for the further security of the makers of the accommodation paper, conveyed to them the mortgaged property.

On February 12, 1888, appellant filed what was termed a supplemental petition, in which, in addition to statement of matters before pleaded, was set up the fact that the title to the property was to remain in it until paid for; and on this ground, as well as by reason of the mortgage, asserted a lien on the property, and no objection seems to have been urged in the court below to the assertion of this right in a supplemental petition.

It seems that after the makers of the accommodation paper knew of the delivery of the note signed by them they released the mortgage executed by Powell for their security.   This was done in March, 1886.

It further appears that about June, 1885, Powell to better secure the makers of the accommodation note conveyed to them the property purchased, and that they subsequently reconveyed to him, but it does not appear whether this was before or after they had knowledge of the fact that the note had been delivered with the condition on which it was to be delivered torn off.

The defendants other than Powell denied under oath the execution of the accommodation note, and further pleaded if they signed the paper that when they did so it had attached to it on the same paper and as a part of it words in substance as follows: "The following note shall not be delivered or have effect until ten men of unqualified solvency shall have first signed the same as sureties." They alleged that this part of the paper was torn off after it came into the possession of appellant's agent without their knowledge or consent, that there were not ten solvent names on it, and that the agreement was that the name of appellant should be inserted as payee in a blank space left for that purpose, but that the name of Powell was inserted.

It was agreed that the following words were written on the paper just above the note when it was signed by the defendants:   "The following note is not to be delivered until signed by ten men of unqualified solvency;" but the evidence is conflicting as to whether this was torn off before the note was delivered to appellant's agent, and as to whether he ever knew that such a writing was ever attached to the note.

Under the finding of the jury and charge of the court it must be held, however, that the jury found that this part of the paper was removed from the note with the knowledge of appellant's agent, and that the note was not signed by ten men of unqualified solvency; for the court charged the jury to find in favor of appellant if its agent had no knowledge of the condition on which alone the note was to be delivered, or if with such knowledge he received it with the names of ten solvent persons signed thereto.

The verdict was in favor of all the defendants except Powell, save those as to whom a discontinuance had been entered, but the finding was against the existence of any lien.

It is urged that the evidence required a finding that appellant's agent did not have knowledge of the condition on which Powell was authorized to deliver the note made for his accommodation, but there is direct evidence that he did have such knowledge, and the verdict in this respect must be sustained.

There was also evidence showing that the note was not signed by ten solvent men, and without that Powell had no right to deliver it.

The agent of appellant having knowledge that Powell had no right to deliver the note unless signed by ten solvent men, in receiving it took the risk of its being signed by such persons.

The evidence shows that Powell was expected to submit the note after it was signed to one of the persons who had signed it, in order that he might pass on the solvency of the others before its delivery, but that this was not done for fear that he would declare some of the persons whose names were signed to it not solvent men.

The note was not negotiable, went into and remains in the hands of appellant, who is charged with knowledge of Powell's want of authority to deliver it; and that its agent may have acted in good faith, believing that the persons who signed it were solvent, is a matter which does not protect appellant.

The makers of the accommodation paper had consented to its delivery only on condition that it should be signed by ten solvent men, and if it was not so signed they were not bound by the unauthorized delivery.

The charges of the court bearing on this question were as favorable to appellant as they ought to have been, and those requested and refused ought not to have been given.

The deposition of Powell was taken and a part of it read by appellant after he had been examined as a witness on the stand, and after this appellees were permitted to read other parts of the deposition.

It is urged that the court erred in permitting this to be done. Such a course may often be necessary to the ends of justice where one party has read a part of a deposition or other paper, and there is nothing in the bill of exceptions tending to show that this was not the case in the present instance.

It is not claimed that improper testimony was thus introduced nor shown that any injury could have resulted to appellant from the admission of the entire deposition.

It appeared on the trial, but not in any pleading, that in the spring of 1886 Powell sold to the "Dallas Times Company" on credit the property for which the note sued on was given, and this action was brought on May 14, 1886.

Appellant, as before stated, sues seeking to enforce the mortgage given to secure the makers of the accommodation note, and also to subject the property for which the note to it was given to sale in satisfaction of that note, and the court gave the following charges:

" If you find that the property described in the mortgage given by L. F. Powell to the signers of said $5000-note was not sold and delivered by L. F. Powell to the Times Publishing Company till after the 20th day of May, 1887, then you will find that plaintiff had a lien upon said property. If upon the other hand you find that said property was sold and delivered to the Times Publishing Company before the 20th day of May, 1887, then you will find that plaintiff has no lien upon said property "

These charges were probably given on the theory that the doctrine of *lis pendens* would control the case, and under the belief that if the Times Publishing Company bought before the amendment of petition in which lien was asserted, that sale cut off all right of appellant to have the property sold in satisfaction of its debt. If the doctrine of *lis pendens* be applicable to the case, facts are not shown that would protect the company purchasing from Powell, and there was no party before the court who could invoke that doctrine.

Appellant insists that it is entitled to enforce the chattel mortgage executed to the makers of the accommodation note, and that they had no right to release it to appellant's prejudice.

"As a general rule, where the surety or person standing in the situation of a surety for the payment of a debt receives a security for his indemnity and to discharge such indebtedness, the principal creditor is in equity entitled to the full benefit of that security, and it makes no difference that such principal creditor did not act upon the credit of such security in the first instance or even know of its existence. The authorities place the principle upon the ground that as security is a trust created for the better securing of the debt it attaches to it, and hence it is that it may be made available by the creditor although unknown to him." Brandt on Surety., 282, and citations.

Appellees who signed the accommodation note contend, however, that they were never bound as sureties and that the mortgage made to them was solely for their indemnity, and that for these reasons appellant is not entitled to subrogation to such rights as they once may have had under the mortgage. As a principal only takes such rights though subrogation as a surety between himself and the debtor had, it would seem to follow that if the security to the sureties was given solely for the purpose of indemnifying them, if the sureties were bound, that the principal creditor would not be entitled to subrogation.

In the case of Constant v. Matteson, 22 Illinois, 546, it was held that to give a creditor the right to be substituted in the place of the surety of his debtor, the relation of debtor and creditor must exist between the cred-

itor and surety, and that the claim on his surety must be valid, binding, and capable of being immediately enforced; but that if the relation of creditor and debtor never existed between the creditor and surety, or having existed has ceased, there can not be any substitution of the creditor to rights of surety.    Whether the mortgage was intended to secure anything but indemnity to the makers of the accommodation paper it is not necessary now to inquire.

Under the contract to sell it is clear that the title to the property embraced in it remained in appellant, and Powell had nothing to mortgage except his right to pay for the property and thus acquire right to title to it; from which it follows if appellant was subrogated to every right the sureties would have had if bound for the debt, that it would have no greater right than it has as owner of the property that Powell attempted to mortgage.

If it appeared that the makers of the accommodation note, with knowledge of the facts attending its execution and delivery, had taken the mortgage, subsequent bill of sale, and possession of the property, this would be strong if not conclusive evidence of their intention that the note as executed and delivered should be binding upon them; but it does not appear that they had knowledge of these facts until after these things had been done.

As the case is now presented it does not become necessary or proper to inquire what may be the rights of appellant, in view of all transactions between the parties, as against the Times Publishing Company.    The material question further to be considered is, whether the facts shown as against the parties before the court entitled appellant to have the property which it contracted to sell to Powell sold and the proceeds applied to the payment of the note executed by him.

Appellant was and still is the legal owner of the property, title thereto never having passed to Powell, though possession did; and as against appellees appellant would be entitled to rescind the sale and to maintain an action for recovery of the property itself.    If, learning that Powell had delivered the accommodation note without authority, appellant had not delivered the property, it would have been its right on failure of Powell to comply with his contract to resell the property contracted to be sold and to apply the proceeds to the payment of the sum contracted to be paid, and for any balance to have had a judgment against Powell.

We are of the opinion that the delivery of the property under the circumstances ought not to be held such a delivery as would defeat the right of appellant to have it sold through a decree of court and the proceeds applied to satisfaction, as far as that will go, of the sum due by Powell.

His delivery of the accommodation note when not authorized to deliver it was a fraud upon appellant as well as the makers of that note, and a possession of the property thus obtained can not defeat the right of ap-

pellant at its election to recover the property sold or to have it subjected to the payment of sum due.

The general rule in reference to personal property is that when the seller delivers possession of the thing sold he parts with seller's lien; but the property in this case was not delivered with intent to pass the title, but rather as a bailment, by the express terms of the contract title remaining in appellant, who expressly agreed to make title only when the purchase money was paid.

The seller now elects to have the property sold and proceeds applied to the payment of the debt due it; and against appellees, we are of opinion it is entitled to this relief, which can not be defeated by the fact that such relief may not have been sought until after Powell had sold, as fully as he could, the property.

The contract of sale was made before the passage of the Act of March 31, 1885 (Sayles' Civ. Stats., art. 3190a), and the rights of any person or corporation holding under conveyance from Powell must be governed by the provisions of the latter part of section 2 of the Act of January 18, 1840. Pasch. Dig., art. 3876.

The judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered June 24, 1890.

Justice Henry did not sit in this case.