## In re NATIONAL CASH REGISTER CO.

### (Circuit Court of Appeals, Sixth Circuit.   December 18, 1909.)

### No. 1,961.

1. LIENS (§ 7*)—NATURE AND INCIDENTS OF LIENS IN EQUITY—"LIEN."

The term "lien" is used in equity in a broader sense than at law, and denotes any right of a special nature over a thing, which constitutes a charge or incumbrance upon it, and may be enforced by proceeding against it, and to the existence of such a lien possession is not essential.  An equitable lien is distinct from the general title, and may exist separate from it, or both may be vested in the same person.

[Ed. Note.—For other cases, see Liens, Cent. Dig. §§ 26–28; Dec. Dig. § 7.*

For other definitions, see Words and Phrases, vol. 5, pp. 4144–4153; vol. 8, p. 7707.]

2. SALES (§ 479*)—CONDITIONAL SALES—REMEDIES OF SELLER—FORECLOSURE OF LIEN IN EQUITY.

In equity the title reserved by a vendor in a contract of conditional sale is regarded as in the nature of a security, which, on default by the purchaser, he may at his option enforce by a proceeding in court to subject the property to the payment of the purchase money, as in case of any lien, instead of asserting his legal title.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1418–1438; Dec. Dig. § 479.*]

3. SALES (§ 479*)—CONDITIONAL SALES—REMEDIES OF SELLER—OHIO STATUTE.

Rev. St. Ohio, § 4155–3, which provides that it shall be unlawful for the vendor of property sold on condition "to take possession of said property" without tendering or refunding to the purchaser, if he has paid 25 per cent. of the purchase price, the amount so paid, less a reasonable compensation for the use of the property, not exceeding 50 per cent. of such amount, does not apply where the seller, instead of taking possession and asserting his legal ownership, proceeds in equity, or by application to a court of bankruptcy having possession, to subject the property to sale for the payment of the remainder due thereon, in which case the purchaser's equity, which it was the purpose of the statute to preserve, is protected by the court by awarding him, or his estate, all of the proceeds of the property above his debt.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1418–1438; Dec. Dig. § 479.*]

Petition to Review an Order of the District Court of the United States for the Southern District of Ohio, in Bankruptcy.

In the matter of Max Goldman, bankrupt.   On petition of the National Cash Register Company to review an order of the District Court.   Reversed.

Harrison Wilson, for petitioner.

Before LURTON, SEVERENS, and WARRINGTON, Circuit Judges

SEVERENS, Circuit Judge.   The petitioner intervened in the proceedings in this matter of bankruptcy by filing a petition setting forth that it had before the bankruptcy sold a cash register to the bankrupt by a contract which among other stipulations contained a condition

that the title should not pass until the price of the register should be fully paid; the price being payable in installments, and the register delivered at the time it was sold. It was further stated that a down payment was made at the time, and one installment later on, but that the remainder of the price was not paid when due, and had never been paid, and that the register came into the possession of the trustee from the bankrupt. On these facts the petitioner prayed that, if the trustee would not complete the purchase by paying the part of the price still due, the court would order it sold, and in making the order should direct the proceeds to be paid over to the petitioner to the extent necessary to complete the payment of the price of the register. The trustee did not elect to pay the balance due, but made no objection to the proposed sale, claiming, however, that the court, in ordering it, should direct the trustee to retain one-half of the amount which the bankrupt had paid on the purchase price of the register. The sum involved is small, but the question involved is important, in view of the fact that such transactions have become common.

The claim made by the trustee was founded upon a statute of Ohio, in which state the transaction occurred. This statute contains a provision requiring contracts for conditional sales to be put to record in the office of the recorder for the county in order to render it valid against purchasers and creditors, and then proceeds (Rev. St. Ohio, § 4155—3) to declare that:

"Whenever such property except machinery equipment and supplies for railroads and contractors, and for manufacturing brick, cement and tiling, and for quarrying and mining purposes, is so sold or leased, rented, hired or delivered it shall be unlawful for the persons who so sold, leased, rented, hired or delivered or his assigns or the agent or servant of either their agent or servant to take possession of said property, without tendering or refunding to the purchaser, lessee, renter, or hirer thereof or any party receiving the same for the vendor, the sum or sums of money so paid after deducting therefrom a reasonable compensation for the use of such property, which shall in no case exceed 50 per cent. of the amount so paid, anything in the contract to the contrary notwithstanding, and whether such condition be expressed, in such contract or not, unless such property has been broken, or actually damaged, and then a reasonable compensation for such breakage or damages shall be allowed. Provided, that the vendor shall not be required to tender or refund any part of the amount so paid unless said amount so paid to the vendor exceeds 25 per cent. of the contract price of the property."

The referee made the order of sale requested, but refused the direction to apply the proceeds to the payment of the balance due the petitioner as prayed, and instead directed the trustee to retain the proceeds to the extent of one-half the amount of the purchase price which the bankrupt had paid. The petitioner brought this order for review before the District Judge, who confirmed it.

The referee based his order upon the construction given to the above statute by the superior court of Cincinnati in the case of Krug, Receiver, v. National Cash Register Co., 1 Ohio N. P. (N. S.) 429. The District Judge cites that case in his opinion, as well as other decisions and dicta which he thought supported the same conclusion. The decisions of the subordinate courts of Ohio, several of which are reported, are in conflict upon the question whether the provisions of the

statute have application to a case, where the vendor has not sought and is not seeking to recover the possession of the thing sold, but is seeking his remedy through the action of a court of equity. It is admitted that there is no decision of the Supreme Court of the state as to whether in such a case as this the statute applies and gives the exclusive remedy to which the vendor may resort, although there are dicta of the judges on which the parties respectively rely. We have, therefore, to rely on our own judgment as to what the statute should be construed to mean.

In equity the reserved title of the vendor is regarded as in the nature of a security for the payment of the price, and in some states it is held that such a conditional sale is the equivalent of an out and out sale and a mortgage back to secure the payment of the purchase money. At law the transfer of the property gives to the vendee the right to the possession so long as he is performing his agreement to pay. But, when he fails to do this, his right to the possession ceases, and he then holds it for the vendor. But in equity these considerations are regarded as technical merely, and the court will look to see whether the vendor has such a hold or claim upon the property as entitles him to subject it to the payment of the purchase money. The maxim that equity follows the law is inapt where the legal remedy is inadequate to the enforcement of equitable rights. 16 Cyc. 137. There are many instances in the law of sales where even at the common law a lien is implied for the protection of the vendor in cases of ordinary sales. Although the agreement is perfected so as to pass the title for most purposes, still the vendor is allowed a lien for the price, while it remains in his own possession; or where he has delivered it to a common carrier according to agreement and the carrier is held to be the agent of the vendee for the purpose of accepting delivery, the vendor is allowed the privilege of recaption in transitu if the vendee becomes insolvent or becomes bankrupt, and in equity the vendor of real property is given a lien, a claim, a hold upon it, notwithstanding it has gone into the possession of the vendee, and no agreement for a lien has been made.

In the Krug Case, supra, the court lays stress on the rule that in order that there should exist a lien the possession must be in the person asserting it, and, further, that a man cannot have a lien on his own property. These are general rules of the common law concerning liens. But neither of them is regarded as important in cases where the lien claimed is asserted in a court of equity and is of an equitable nature. The terminology of the common law where a lien is spoken of is inadequate to describe a large class of rights in or to a subject arising from the express or implied contracts of parties which are recognized and enforced in courts of equity. The difference in the meaning of the term when used to describe an equitable right is thus stated in 3 Pom. (1st Ed.) 230, § 1233:

"It is simply a right of a special nature over the thing, which constitutes a charge or incumbrance upon the thing, so that the very thing itself may be proceeded against in an equitable action, and either sold or sequestered under a judicial decree and its proceeds in the one case, or its rents and profits in the other, applied upon the demand of the creditor in whose favor the lien ex-

ists. It is the very essence of this condition that, while the lien continues, the possession of the thing remains with the debtor or the person who holds the proprietary interest subject to the incumbrance. The equitable lien differs essentially from the common-law lien, which is simply a right to retain possession of the chattel until some debt or demand due to the person thus retaining is satisfied, and possession is such an inseparable element that, if it be voluntarily surrendered by the creditor, the lien is at once extinguished."

This doctrine was recognized and applied in Walker v. Brown, 165 U. S. 654, 17 Sup. Ct. 453, 41 L. Ed. 865, and in Ingersoll v. Coram, 211 U. S. 335, 29 Sup. Ct. 92, 53 L. Ed. 208. See, also, Bispham's Principles of Equity (4th Ed.) § 351; Ex parte Linden, 1 Mont. D. & D. 435.

Nor is it true that a man may not have an independent equitable interest in property of which he holds the legal title. His legal title may be qualified or doubtful, or subordinated to the claims of another, and he may acquire an outstanding interest which will not be merged in it, if equity requires that the interest acquired should be preserved. This is only one of the instances in which the court recognizes the special right or interest in property as distinct from the general title, although both are vested in the same person. If another person claims an interest which the first is bound, or is willing, to admit, there can be no reason why he may not proceed to enforce an equitable interest which he has growing out of his dealings with the other concerning things of which the first has the general title.

In order to rightly understand the meaning of this statute, we should look to see what were the rights and remedies of the parties to a contract for the conditional sale of property at the time of its enactment. From such an examination we shall be prepared to understand what injustice the statute was intended to remedy. By the then existing law the vendor, when the condition was that the price should be paid before the title to the property should pass, had the right to recover the possession, treat the contract as at an end, and the right of the vendee to such part of the price as had been paid as forfeited (6 Am. & Eng. Enclyp. of Law, 458, and the cases there cited), or, as sometimes held, he might, on recovering the property, sell it for what he could get, and, applying the proceeds to the unpaid part of the price, recover the deficit, if any should remain, from the vendee. But he was not obliged to do this. He could simply recover possession and keep what he had been paid. These were the doctrines of the common law. And it is evident that the Legislature of Ohio assumed that to be the law, for it was the exceeding harshness of such a doctrine that the statute ameliorates. It does not provide a remedy which is precisely according to the principles of equity, for it is provided that the refunding by the vendor shall not be required unless the amount he has received exceeds 25 per cent. of the contract price. If the vendor, instead of taking back the property, should foreclose the vendee's right by a proceeding in equity, there would be no such limitation. On the other hand, as the law then stood, the vendor, treating the title of the property reserved by the contract as a security for the payment of the price, might file his bill in equity to obtain a judicial sale of the property and an appropriation of the proceeds to the payment of the debt.

By the latter course the equity of the vendee was protected by the conscience of the court and its power of control over the sale. He suffered no wrong of which he could complain. That the vendor has the right to proceed in this manner, we think, cannot be doubted. It is a favorite jurisdiction of equity to relieve against forfeitures, and the practice of this remedy will subserve the purposes of justice in such cases. Ross-Meehan, etc., Co. v. Pascagoula Ice Co., 72 Miss. 608, 18 South. 364; Briggs v. Oliver, 68 N. Y. 336; Campbell Printing Press Co. v. Powell, 78 Tex. 53, 14 S. W. 245; Boynton v. Payrow, 67 Me. 587.

The vendee had agreed to buy the property at the price named. The petitioner had a claim upon it, which it might treat as in the nature of an equitable lien for the unpaid balance of the price. It had the right to proceed in equity, but for the fact that the property was in the custody of the bankruptcy court. It was the consequence of the first of these methods, namely, the recaption of the property by the vendor and the forfeiture of the purchase money paid by the vendee, which induced the Legislature to pass this law. There was no other appreciable wrong to be remedied.

Looking next to the words of the statute, it is seen the language is apt to express its application to a case where the vendor elects to retake the property. The statute says "it shall be unlawful for the persons who so sold * * * to take possession of said property without tendering or refunding to the purchaser the sum or sums of money so paid," with a certain limitation to the application of the statute, which is expressed in the proviso. There is no provision which applies to a case where the vendor does not "take possession," but seeks to enforce his security at arms' length by judicial proceedings. And we can see no excuse for extending the statute by so violent an implication as would be necessary to reach a case where there is no obvious need of a remedy.

In the present case the vendor has not taken possession. The trustee has succeeded the bankrupt in the possession of the property, and the vendor is seeking an order requiring the trustee to sell it. As the property is in the custody of the court in bankruptcy, it is the only forum in which the remedy can be obtained. The court will control the sale in like manner as a court of chancery would control the sale of property under its disposition. The vendor asks that the proceeds of the sale shall be applied to the payment of the debt for which it holds the title as security. The trustee demands that the statute be applied, and that he should be given the right to retain out of the proceeds one-half of the amount of the purchase price paid by the vendee, and that this right be declared to be paramount to the right of the vendor to share in the proceeds. But the earlier equity of the petitioner must prevail.

For the reasons given, the order of the court below must be reversed in respect to the matter complained of, and the court below instructed to grant the prayer of the petition.