## SECURITY NAT. BANK v. TRUSCON STEEL CO. et al.

No. 11651—Opinion Filed July 10, 1923.

Rehearing Denied Sept. 18, 1923.

**1. Attachment — Release of Part of Attached Property — Effect.**

An attaching plaintiff can release part of the attached property, in the absence of fraud and collusion, without prejudice to the attachment upon other property not released.

**2. Sales—Conditional Sales—Reservation of Title.**

A sale of personal property under written contract reserving title to the property in the seller until payment or incorporation in a certain structure, there being no inconsistent provisions in the contract of sale or in any instrument connected therewith, is a conditional and not an absolute sale.

**3. Same—Priority of Seller's Lien Over Attaching Creditor with Notice.**

In an action to determine priority of liens between a conditional sale vendor of personal

property, under a contract reserving title in the vendor until the property is paid for, and an attaching creditor who had actual notice of the vendor's reservation of title contract prior to the levying of the attachment, the vendor is entitled to a first and prior lien on the property involved, and such lien may be established in an equitable proceeding.

**4. Same—Filing of Conditional Sale Contract—Notice.**

The filing of a contract of conditional sale with a register of deeds is constructive notice only of its existence; and if a party has actual notice of such conditional sale, the purpose of the statute is accomplished.

('Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action by State National Bank, as plaintiff, in which action the Truscon Steel Company intervened, and the Security National Bank was made a party defendant and filed an answer and cross-petition. From an order of the court determining priority of liens of the various parties, the Security National Bank, defendant and cross-petitioner, appeals. Affirmed.

Embry, Johnson & Tolbert, for plaintiff in error.

Keaton, Wells & Johnston, W. F. Guthrie. and O. P. Lambert, for defendants in error.

Opinion by PINKHAM, C. This appeal involves controversies, first, between plaintiff in error and the State National Bank and Julius Kahn, defendants in error, over the priority of liens on personal property of the Olson-Magee Company for use in constructing a bridge across the South Canadian river, and designated as lot 9, being one clam shell, one concrete conveyor or bucket, and one piece of tract, about ten feet long, at Moore, Okla.; and lot 11, being one Kissel motor truck and all attachments, including trailer for truck, then near Moore, Okla.; and lot 13, being Lackawanna steel piling, about 55 pieces; and lot 17, being all bridge work, materials and equipment and supplies not specified in certain other lots, as set out in the judgment and findings of the court.

Second, between plaintiff in error and the Truscon Steel Company, defendant in error. over the priority of liens on certain personal property designated as lot seven, being all reinforcing steel, consisting of two piles between two elevators at Moore, Cleveland county, Okla., which steel had been purchased from said Truscon Steel Company, defendant in error, by Olson-Magee Company, defendant in error, to be used in the construction of the said bridge, and attached September 12, 1919, by plaintiff in error.

The State National Bank, defendant in error, Security National Bank, plaintiff in error, and the Truscon Steel Company, defendant in error, had demands against Olson-Magee Company, and the only issues are as to which of the parties hereinbefore mentioned have the prior right to such property, the other defendants in error having no claims on the same.

On January 18, 1919, the State National Bank, defendant in error, filed suit as plaintiff in the district court of Oklahoma county, against the Olson-Magee Company, a corporation, which had previously undertaken under a contract with the State Highway Department to construct a bridge across the South Canadian river, between Cleveland and McClain counties, the funds being contributed by the state, the counties and the federal government, and against M. L. Cunningham as State Engineer, to recover $26,449.49, with interest, for money advanced to Olson-Magee Company.

The case was afterwards dismissed as to Cunningham, and the state withdrew from the suit.

On January 20, 1919, the State National Bank procured writs of attachment to the sheriffs of Cleveland and McClain counties, respectively.

The Cleveland county attachment was levied January 21, 1919, on a large amount of "lumber—average 10 feet long," piling of various lengths, a carload of piling and five "cars of bridge steel," the "first five" of the cars shipped by Truscon Steel Company, defendant in error.

The McClain county attachment was levied January 20, 1919, on certain lumber, cement. buildings, equipment, and tools.

The effect of these attachments was to 'stop work on the bridge and prevent the Olson-Magee Company from realizing on monthly estimates upon their contract. In this situation the State National Bank, plaintiff below, Olson-Magee Company and M. L. Cunningham, State Engineer, entered into a stipulation bearing date of February 28 and March 1, 1919, by the terms of which Olson-Magee Company paid the State National Bank $10,000 (furnished by the state) and the state agreed to pay to the State National Bank "at least $5,000, out of moneys coming due from the state to defendants every 30 days," the first payment to be made "on or about the 25th day of March, 1919."

It was also agreed that if the monthly estimates exceeded $5,000, the State National Bank should be paid two-thirds of the amount up to $7,500. The Olson-Magee Company were to have the balance for working capital. Olson-Magee Company agreed to do work enough to entitle them to a monthly estimate of $5,000 every 30 days.

The stipulation then provides as follows:

"The sheriff of Cleveland county and the sheriff of McClain county shall stay and remain in possession of all property of the defendants attached by said sheriffs, respectively, as shown by the return of said sheriffs on file herein, and shall deliver to said defendants, Olson-Magee Company and O. H. Olson, their agents and employes, the building material held by said sheriffs under said attachment writ as the same is in the due course of work in the construction of said bridge spanning the Canadian river between the counties of Cleveland and McClain, at Newcastle, Oklahoma, required by the said defendants, Olson-Magee Company and O. H. Olson, but aside from the materials so delivered from time to time as necessitated in the construction of said bridge, said attachments shall be and remain in full force and effect.

"It is further agreed that the said Olson-Magee Company and O. H. Olson, defendants, shall have the right to use all tools, machinery and equipment now under said attachment writ; the same, however, to be at all times under the care, keeping and custody of the respective sheriffs as aforesaid, the sole and only purpose in permitting the said defendants to use said tools, machinery and equipment being such as is necessary for the construction of the bridge aforesaid."

Materials released from the attachment were put into the bridge, and the equipment was used by the Olson-Magee Company in carrying on the work of the construction of the bridge.

On March 3, 1919, Olson-Magee Company, O. H. Olson and Allen J. Olson executed their note of that date to the plaintiff in error in which they promised to pay $10,000 on May 12, 1919. The note was afterwards extended to June 26, 1919.

To secure this indebtedness the Olson-Magee Company executed its mortgage upon certain equipment and buildings, in each of the two counties, concluding with: "This mortgage is intended to, and does cover any and all tools and equipment of any kind and nature." The mortgage also secured another note for $5,000, payable April 12, 1919, which, it appears, has been paid.

The mortgage of the Security National Bank, plaintiff in error, was filed for record in the counties of McClain and Cleveland, where the property described therein was kept, April 6th and 8, 1919, respectively; the attachment of the State National Bank, levied January 20, 1919, was levied on certain of that property classified for the purpose of the trial and referred to as lots 9, 11, 13, and 17 in the judgment of the court.

Between the date of State National Bank attachment and the mortgage to the plaintiff in error, the "last three cars" of the Truscon Steel Company's reinforcing steel had arrived and been unloaded. These "last three cars" of steel were not attached by the State National Bank, and were not included in the plaintiff in error's mortgage.

The Truscon Steel Company, defendant in error, had shipped to the Olson-Magee Company five cars of material from November 21, 1918, to January 20, 1919, inclusive, and three cars on February 27th and 28, 1919.

The material parts of the contract between the Olson-Magee Company and O. H. Olson, and the Truscon Steel Company, defendant in error, are that the deliveries to Olson-Magee Company were to be "f. o. b. Youngstown, Ohio or Pittsburg, Pennsylvania;" that "prices are quoted f. o. b. plant, title reserved until payment or incorporation in structure. "In case buyer fails to make payments in accordance with the terms and provisions of this agreement, seller may defer further shipments until such payments are made, or may at his option terminate this agreement and retake possession of shipments," and "this contract and all questions arising hereunder shall be construed and determined according to the laws of the state of Ohio."

The total sales price of the entire eight cars of the Truscon Steel Company's reinforcing steel was $21,203.99.

The conditional sale contract of Truscon Steel Company was filed for record in McClain county on September 6th, and in Cleveland county on September 8, 1919.

On September 8, 1919, Truscon Steel Company filed its intervening petition in the attachment suit, setting up the facts, and asking relief in equity by way of a decree ascertaining the amount unpaid (the record discloses that nothing had been paid) upon the purchase price, establishing its right under its title reservation to have the property sold for the satisfaction of its claims.

The Truscon Steel Company asked the appointment of a receiver to hold and preserve the rights it sought to protect in equity pending the disposition of the litigation, and made the plaintiff in error a party.

A receiver was appointed on September 8, 1919, and qualified on September 9, 1919.

The plaintiff in error, being brought into the case, filed its answer and cross-petition September 11, 1919, to recover from Olson-Magee Company on its $10,000 note and mortgage, and asked that said mortgage be foreclosed, and at the same time issued writs of attachment to the sheriffs of both counties, which were served in Cleveland county on the 12th day of September and in McClain county September 15, 1919.

These writs of attachment were levied upon property previously attached by the State National Bank, and upon the last "three cars" of Truscon Steel Company, which, as before stated, were not covered by the attachment of the State National Bank or the mortgage of the plaintiff in error.

At the trial, to facilitate the understanding of the evidence, it was agreed that the property subject to contending liens, claims, ownership, or otherwise, and for purposes of sale, might be by the court divided and described as lots or parcels by number; and it was also agreed that lots 9, 11, 13 and 17 were levied upon by the attachment of the State National Bank January 20, 1919, and subsequently mortgaged to the plaintiff in error. The court rendered judgment for the State National Bank and Julius Kahn, who had succeeded to the rights of the State National Bank, establishing their prior lien on lots 9, 11, 13, and 17; and for Truscon Steel Company for lot 7, establishing their prior lien thereon, which consisted of the "last three cars" of steel shipped to the Olson-Magee Company; and for the plaintiff in error, establishing its prior lien on other items of property. The plaintiff in error excepted to the findings, decision, and judgment of the court as to the priority of liens on lots 7, 9, 11, 13, and 17.

Plaintiff in error filed and presented its motion for new trial, which motion was by the court considered and overruled, to which plaintiff in error excepted and exception was allowed. Thereupon plaintiff in error gave notice in open court of its intention to appeal to the Supreme Court, and the cause comes on regularly for consideration by this court.

Plaintiff in error assigns as error, first, the trial court erred in overruling plain-tiff in error's motion for a new trial, to which ruling plaintiff in error excepted at the time; second, that the decision and judgment of the court is not sustained by sufficient evidence but is contrary to the evidence; third, the decision is contrary to law; fourth, for errors of law occurring at the trial and excepted to by this said Security National Bank at the time; fifth, that the trial court erred in failing to find and adjudge that this said Security National Bank had liens for the payment of its demand sued on, upon all such property and upon the several parts thereof, prior and superior to the title and liens claimed by the plaintiff and the said Truscon Steel Company, and prior and superior to the title and liens claimed by either the plaintiff, State National Bank, or the said Truscon Steel Company.

Two questions are raised by plaintiff in error in their brief. The first relates to the property set out and described as lots 9, 11, 13, and 17, upon which the court found and adjudged that the State National Bank and Julius Kahn had a prior and superior lien, to which the plaintiff in error excepted, claiming that the plaintiff in error's mortgage was the only lien and the prior lien, and this presents the issue between the State National Bank and the plaintiff in error.

The second question has reference to the property set out and described as lot 7, in which the court found and adjudged that the Truscon Steel Company had title to such property and that its rights were superior to the attachment of the plaintiff in error.

The property described in lots 9, 11, 13, and 17 was attached by the State National Bank January 20, 1919; the chattel mortgage of the plaintiff in error covering the same property was filed April 6 and 8, 1919, in McClain and Cleveland counties, respectively.

The argument of plaintiff in error is that the stipulation entered into January and February, 1919, between the State National Bank, attachment creditor, and the Olson-Magee Company, attachment debtor, under the terms of which the Olson-Magee Company was permitted to continue the work of the construction of the bridge, operated as a matter of law to the release of the State National Bank attachment, and therefore the plaintiff in error's chattel mortgage became the first lien on the property involved.

In support of plaintiff in error's position as to the controversy between it and the

State National Bank and Julius Kahn, a number of authorities are cited, the first being a case from our own court, Southwestern Broom & Warehouse Co. v. City National Bank, 52 Okla. 422, 143 Pac. 204. in which it is held that a sheriff can release an attachment without the order of the court upon authority of the attachment creditor or his attorneys. There is no question as to the soundness of the decision in that case, but it does not touch the question raised in this case, which is, as we understand it, the right of an attachment creditor to release a part of the attached property, made in good faith, without losing his lien on the remainder.

"The fact that the prior attaching creditor released a portion of the attached property does not have the effect to postpone his attachment on the balance of the goods as to the claim of subsequent attaching creditors." (Doggett, Basket & Hill Co. v. T. T. Wimer et al., 54 Mo. App. 125.)

"The release from attachment of one tract of land by the attaching creditor, who had no notice of the mortgage of another tract made subsequent to its attachment by him, will not entitle the mortgagee to priority over the attachment to the extent of the value of the land released." (Johnson v. Bell, 58 N. H. 395).

"Merely allowing the debtor to use property not consumable in the use will not be regarded as an abandonment of the attachment if the officer or his agent has it in his power at all times to take it into possession" * * * (6 C. J., sec. 596.)

In the case of Young v. Walker, 12 N. H. 502, it is said:

"The mere fact, then, that the property is used by the debtor, would not seem to be enough to dissolve the attachment, so that another officer could acquire a lien upon it, particularly when he knew that there was a subsisting attachment.

"The knowledge must, it is true, extend beyond the fact that the goods had once been under attachment. What act, what species of possession, and what degree of vigilance, will constitute legal custody, is often a question of difficulty, depending upon a variety of circumstances, having respect to the nature and situation of the property, and the purposes for which custody and vigilance are required; and especially, to the notice to other officers and persons having conflicting claims."

Undoubtedly, where the release of part of a large amount of attached property is pursuant to a fraudulent design and conspiracy between the attaching plaintiff and the attaching debtor to hold the attachment as a shield against other creditors while the debtor is permitted to realize upon the property, such acts on the part of the attaching creditor and attaching debtor would operate to release the attachment so that subsequent liens acquired would be held valid, but the record in this case does not present such a state of facts. There is no contention that there was fraud or conspiracy between the State National Bank and the Olson-Magee Company when the stipulation referred to was entered into.

The case of Nichols v. Patton (Mo.) 36 Am. Dec. 713, is cited by plaintiff in error in support of the contention that the attachment of the State National Bank was abandoned. It is held in the syllabus:

"To preserve attachment, officer must retain his control and power, of taking immediate possession if he fails to do this the attachment will be regarded as abandoned."

In the statement of facts in that case it is said, in substance:

"The plaintiff called one Wheeler as a witness, who testified that he met the plaintiff on the morning of January 16, 1837, coming from the mill where the property in question then was; that plaintiff told him that he had attached the property there, and requested him to forbid any one to take the things away; that witness did not promise to do so; that he was not appointed keeper of the property; that he did not receipt for it, nor promise to keep it; that he worked about the mills until February 4th, when he left."

In the body of the opinion in that case it is said:

"To constitute an attachment it is not necessary that the officer should handle the goods attached, but he must be in view of them with the power of controlling them and of taking them into possession * * * to preserve an attachment when made, the officer must by himself or by his agent retain his control and power of taking immediate possession in all those cases in which the property is capable of being taken into actual possession; * * * if he does not do this the attachment will be regarded as abandoned and dissolved."

Continuing, it is said in the opinion:

"The application of these principles to the present case, as now presented by the testimony, would decide that the attachment might be sufficient, if followed by the continual presence of the officer or of some one on his behalf. There is no evidence of any continued control or of any attempt to retain it, unless Wheeler can be considered as undertaking to act for the officer. The mere request to Wheeler to give notice would not be sufficient unless he con-

sented to assume the trust of taking charge of the goods for the officer * * * there can be no doubt that he ceased to have any such connection with it as would preserve the attachment after the 4th of February, following."

The facts disclosed in the case referred to (Nichols v. Patten, supra) by plaintiff in error makes the case relied on inapplicable to the facts in the case at bar.

There is ample evidence in the record in this case that at no time was the property held under attachment of the State National Bank without custodians.

Another case cited by plaintiff in error is Weston v. Dorr, 42 Mo. 295, in which case it was held:

"Sheriff attaching personally must retain possession himself or by his servant, or have the right of taking immediate possession or the attachment will be dissolved."

The rule of law quoted in the statement is unquestioned, but we do not think it has any application to the facts in the instant case.

In the record before us it is clearly disclosed that the State National Bank permitted the Olson-Magee Company to incorporate in the bridge part of the materials attached, and further permitted the use of the equipment in furtherance of the work. As to this usable equipment, the stipulation expressly provided that "aside from the materials so delivered from time to time as necessitated in the construction of said bridge, said attachment shall be and remain in full force and effect," and that the defendants shall "have the right to use all tools, machinery and equipment now under said attachment with the same, however, to be at all times under the care, keeping, and custody of the respective sheriffs aforesaid, the sole and only purpose in permitting the said defendant to use the said tools, machinery, and equipment being such as are considered necessary in the construction of said bridge."

"Merely allowing the debtor to use property not consumable in the use will not be regarded as an abandonment of the attachment if the officer or his agent has it in his power at all times to take it into possession; although it has been considered that in such cases there should be an officer who should be in possession and control of the property, and that the use should be under the immediate supervision of such keeper." (6 C. J. 596, p. 319.)

We do not understand that the plaintiff in error makes any contention that under the stipulation referred to materials releas-

ed did not go into the bridge, or that the tools, machinery, etc.—usable equipment upon which the attachment of the State National Bank was not released, but which the Olson-Magee Company was permitted to use in connection with the construction of the bridge,—were not so used, but that, as a matter of fact, there were no guards or custodians of the usable equipment; and hence the attachment was abandoned.

An examination of this record convinces us otherwise. It is inconceivable that the trial court, having examined the custodians of the attached property and other witnesses on that question, would have allowed the very considerable sum of $4,200 as custodian fees if this contention of plaintiff in error had any substantial support in the testimony.

The cases cited by plaintiff in error to which we have referred and others of similar import also cited in plaintiff in error's brief rest upon a state of facts materially different from those disclosed in this case, which are to the effect that the attached property was at all times in the custody and control of persons representing the sheriffs.

We have not overlooked the earnest contention of counsel for plaintiff in error to the effect that as to one of the items, the "Kissel truck," designated as lot 9 by the court, "there is no evidence that there was ever a custodian" of said truck.

It is sufficient to say that the particular duty of the custodian or guard appointed by the respective sheriffs was to see: First, that the materials released went into the bridge and nowhere else; and, second, that the machinery, tools, etc., were used for the one purpose only of enabling the Olson-Magee Company to continue the work of bridge construction; in other words, to prevent this equipment from being spirited away. The fact that subsequently the receiver sold all of the property including this Kissel truck, is evidence that the custodians performed their duty.

Our conclusion is that an attaching plaintiff can release part of the attached property in the absence of fraud and collusion, without prejudice to the attachment lien upon other property not released.

The second question discussed by counsel for plaintiff in error in their brief pertains to the property described in the judgment as lot 7, which consisted of two piles of reinforcing steel, which, as the record discloses were the last three cars of steel shipped by the Truscon Steel Company, defend-

ant in error, pursuant to a conditional sale contract reserving title in the seller until payment of the purchase price or incorporation of the materials in the bridge.

The issue on this branch of the case is whether plaintiff in error's attachment levied in Cleveland county September 12th, and in McClain county September 15, 1919, entitled it to a lien superior to the claim of the Truscon Steel Company under its reservation of title contract, or whether either plaintiff in error or the Truscon Steel Company had any lien thereon, and if not, whether the same should go to all creditors in proportion to their unpaid claims.

The Truscon Steel Company's conditional sale contract was filed in the office of the county clerk of Cleveland county, Okla., September 8, 1919. There is no question but that the conditional sale contract relied on by the Truscon Steel Company was recorded before the attachment of the plaintiff in error. This particular property, designated in the judgment as lot 7, was not covered by the plaintiff in error's mortgage or the State National Bank's attachment, but plaintiff in error attached this property September 12, 1919.

Plaintiff in error contends that the contract under which this reinforcing steel was sold to the Olson-Magee Company was not a conditional sale contract, but effected an absolute sale attempting to reserve a secret lien, and that as the same was not witnessed or acknowledged as a chattel mortgage, it was not entitled to be filed, and the filing by the respective sheriffs was to see, first, that even if it were a conditional sale contract, it was of the date of July 9, 1918, and was not filed in the office of the county clerk of Cleveland county, Okla., until September 8th, and was therefore void as to creditors of Olson-Magee Company extending credit to them.

It is settled by law that there is a real distinction between a conditional sale and an absolute sale with a mortgage back, in that under the former the vendor remains the owner, subject to the vendee's right to acquire the title by complying with the stipulated conditions; while under the latter the vendee immediately becomes the owner subject to the lien created by the mortgage. Bailey v. Baker, 239 U. S. 271.

Whether the contract in question was a conditional or an absolute sale depends upon the intention of the parties to the contract, and such intention must be found in the language used in the contract. 24 R. C. L. 446.

"The contract says in terms that it is conditional and that the goods are to remain the property of the seller until payment on the note given for the price. This stipulation was perfectly lawful, so that the only question is whether any other provision of the contract is inconsistent with this one or qualifies and explains it as intended to do less than it purports to do when taken alone." (Bierce v. Hutchins. 205 U. S. 348.)

The parties to the conditional sale contract in this case say that title is reserved in the seller until payment or incorporation in the bridge. There is no other provision in the contract or in any other instrument connected with it inconsistent with such reservation of title provision.

In the case of Hall v. Draper, 20 Kan. 127, the effect of a contract of conditional sale was drawn in question, and the court, speaking through Justice Brewer, said:

"The title and all the rights of control and possession flowing from the title were theirs (the vendors') except as in terms restricted by the contract. The only limitations upon their full control of the organ were those created by this instrument; and the only rights Leveridge (the vendee) had were those obtained by it. In this respect such a conditional sale differs from an absolute sale with a mortgage back. In such case the vendee has everything except as limited by the terms of the mortgage. Here he has nothing except as expressed in his contract."

In case of McDaniel v. Chiaramounte (Ore.) 122 Pac. 333, it is said:

"The transaction is none the less a conditional sale because the buyer is obligated absolutely to pay the price, as that is a condition alike of absolute and conditional sales."

The case of Andrews & Co. v. Colorado Springs Bank (Colo.) 46 A. S. R. 291, is cited by counsel for plaintiff in error in their brief in support of the contention made that the contract in question was not a conditional, but an absolute sale. That case, we think, is clearly not in point. In that case it appears notes were executed by the buyer, the terms and stipulations of which the court held rebutted the provisions of the contract to the effect that the title to the property involved should remain in the seller.

There being no inconsistent provisions in the contract in this case, or in any instrument connected with it, the contract must be held to be what it so clearly purports to

be, a conditional and not an absolute sale contract.

But, aside from the constructive notice, the sufficiency of which need not be determined here, given plaintiff in error by the recording of the conditional sale contract of the Truscon Steel Company, the plaintiff in eror had actual notice prior to its attachment by the averments of the intervening petition of the Truscon Steel Company, filed September 8, 1919, to which the plaintiff in error filed an answer and cross-petition, and under which its attachment was issued September 12, 1919.

"Third persons with actual notice of the reservation of title are not within the protection afforded by the statutes, and actual notice has the same effect as a record regularly made as required by law." (6 Cyc. 498.)

"The filing of a contract of conditional sale with a register of deeds in constructive notice only of its existence; and if a party has actual notice of such conditional sale contract, the purpose of the statute (8551, Comp. Laws 1921) is accomplished," (Money Weight Scale Co. v. Hale-Halsell Grocery Co., 57 Okla. 135, 156 Pac. 1187.)

The record further discloses that the Truscon Steel Company prior to the plaintiff in error's attachment asserted its claims in its intervening petition and asked the court to enforce its lien, and the court had appointed a receiver pursuant to this equitable attachment.

The claim of a receiver as against a subsequent attaching creditor dates from the appointment of the receiver. Ardmore Nat. Bank v. Briggs, etc., Co., 20 Okla. 427, 94 Pac. 533.

The form of remedy pursued by the Truscon Steel Company in resorting to a court of equity and there claiming a lien on the property sold under a conditional sale contract is recognized by the weight of authority.

In the case of Ballinger v. West Publishing Co., 44 Dist. Col. App. 49, it is said:

"It seems to be settled by the weight of authority that where a sale is made of property on what is known as the 'installment plan' providing for stated payments, evidenced by a contract continuing the title in the vendor until all payments are made, with a condition that upon default of the vendee, his right in the property shall fail and the vendor shall have the right to a surrender of the property * * * the vender may elect to consider the property as security for the payment of the balance due, and may invoke the aid of a court of equity to the extent of subjecting the property to

the satisfaction of the equitable lien thus created."

To the same effect are the cases of In re National Cash Register Co., 174 Fed. 579, (6 C. C. A.); McDaniel v. Chiaramonte, 61 Ore. 403, 122 Pac. 33; Carabin v. Wilhelm (Wash.) 151 Pac. 87; Foundry Co., v. Ice Machine Co., 72 Miss. 608; Southern Coal Co. v. Alley, 127 Tenn. 173, 154 S. W. 536; Campberil P P. & M. Co. v. Powell, 78 Tex. 53, 11 S. W. 245; White v. A. W. Gray's Sons, 87 N. Y. Supp. 481.

Plaintiff in error had not reduced its claim to judgment prior to receiving actual notice through the averments of the intervening petition of the Sruscon Steel Company.

In this connection, an examination of the case of In re Johnson, 212 Fed. 311, relied on by plaintiff in error, discloses that the exact question here presented was not before the court in that proceeding, and that therefore said decision is not controlling upon the facts shown by this record.

Where a general creditor, before his claim has been reduced to judgment or merged into a lien, attaches personal property sold under a conditional sale contract. and where such creditor has actual notice of such reservation of title contract at and prior to the time of issuing his attachment the right of the conditional vendor to a prior lien on said property is superior to that of such attaching creditor.

The contract provided for a delivery which was to be made f. o. b. cars in Ohio. and expressly provided:

"This contract and all questions arising hereunder shall be construed and determined according to the laws of the state of Ohio."

In the case of In re National Cash Register Company, 174 Fed. 579 (Sixth Circuit, embracing the state of Ohio), it is said:

"In equity the title reserved by a vendor in a contract of conditional sale is regarded as in the nature of a security, which on default by the purchaser, he may at his option enforce by a proceeding in court to subject the property to the payment of the purchase money, as in case of any lien, instead of asserting his legal title."

After an examination of a rather voluminous record, we think the judgment of the trial court fairly and equitably protected the rights of the parties, and that the judgment should be affirmed.

By the Court: It is so ordered.